**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **AD HOC SHRIMP TRADE ACTION COMMITTEE**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES,**<br><br>**Defendant.** | **Court No. 26-05205** |

**COMPLAINT**

Plaintiff Ad Hoc Shrimp Trade Action Committee ("Plaintiff"),[1] by and through its undersigned attorneys, makes the following allegations.

**DETERMINATION CONTESTED**

1. Plaintiff contests certain factual findings and legal conclusions in the final determination issued by the U.S. Department of Commerce in the expedited review of the countervailing duty ("CVD") order on frozen warmwater shrimp from Ecuador.

2. The Department issued the contested determination on July 31, 2026, and notice thereof was published in the Federal Register on August 6, 2026. See Frozen Warmwater Shrimp From Ecuador: Final Results of Countervailing Duty Expedited Review, 91 Fed. Reg. 50,765 (Dep't Commerce August 6, 2026) ("Final Results"). The challenged determinations, findings, and conclusions were set out primarily in the Issues and Decision Memorandum ("IDM") accompanying the Final Results.

[1] AHSTAC is an *ad hoc* association whose members are: Nancy Edens; Trico Shrimp Company, Inc.; Tarvin Seafood Inc.; Bosarge Boats, Inc.; Anchored Shrimp Company; Big Grapes, Inc.; Versaggi Shrimp Co.; Craig Wallis; and the Southern Shrimp Alliance.

3. The Department subsequently published a Federal Register notice amending the Final Results to correct certain ministerial errors. See Frozen Warmwater Shrimp From Ecuador: Amended Final Results of Countervailing Duty Expedited Review, 91 Fed. Reg. 58,086 (Dep't Commerce Sept. 14, 2026) ("Amended Final Results").

**JURISDICTION**

4. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(1)(D), which confers upon the Court exclusive jurisdiction to review any civil action that concerns the "administration and enforcement with respect to the matters referred to in subparagraphs (A) through (C) of this paragraph and subsections (a)-(h) of this section." The Final Results relate to the administration and enforcement of U.S. laws providing for CVD duties, 19 U.S.C. §§ 1671-1671e, which concerns matters referred to in 28 U.S.C. § 1581(c). The Court therefore has jurisdiction under 28 U.S.C. § 1581(i)(1)(D).

5. The statute states that jurisdiction under 28 U.S.C. § 1581(i) is not available for "an antidumping or countervailing duty determination which is reviewable by—(A) the Court of International Trade under section 516A(a) of the Tariff Act of 1930 (19 U.S.C. 1516a(a))." 28 U.S.C. § 1581(i)(2)(A); see also Norcal/Crosetti Foods, Inc. v. United States, 963 F.2d 356, 359 (Fed. Cir. 1992) ("Section 1581(i) jurisdiction may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that subsection would be manifestly inadequate." (emphasis in original)). The statute, at 19 U.S.C. § 1516a(a), provides for the judicial review of the Department's determinations under specific statutory provisions, none of which concern CVD expedited reviews conducted under the agency's regulations set forth at 19 C.F.R. § 351.214(l). See 19 U.S.C. § 1516a(a). Accordingly, the Court has held that "expedited reviews are not among the proceedings and determinations covered by {19 U.S.C. § 1516a(a)} and, thus, do not fall within the court's (c)

jurisdiction." Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States, 413 F. Supp. 3d 1334, 1343 (Ct. Int'l Trade 2019). The Court further found that 28 U.S.C. § 1581(i) confers subject matter jurisdiction for it to review the Department's CVD expedited review determinations. Id. at 413 F. Supp. 3d at 1347. The Federal Circuit found that Commerce has statutory authority to conduct CVD expedited reviews. In doing so, the Federal Circuit explicitly stated that it "see{s} no reversible error in the Trade Court's conclusion that it had jurisdiction under {28 U.S.C. § 1581(i)}." Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States, 66 F.4th 968, 976 n.4 (Fed. Cir. 2023).

6. In conclusion, consistent with the statute and precedents, this Court has jurisdiction to review the Department's Final Results under 28 U.S.C. § 1581(i)(1)(D).

**TIMELINESS OF THE ACTION**

7. The Final Results of the expedited review of the CVD order on certain frozen warmwater shrimp from Ecuador were published in the Federal Register on August 6, 2026. See Final Results, 91 Fed. Reg. at 50,765.

8. This action was commenced by the filing of a Summons and Complaint on November 6, 2026, within two years after the cause of action first accrues pursuant to 28 U.S.C. § 2636(i). Thus, this action is timely commenced pursuant to 28 U.S.C. § 1581(i).

**STANDING OF PLAINTIFF**

9. Plaintiff has standing to bring this action pursuant to jurisdiction under 28 U.S.C. § 2631(i), which provides that "{a}ny civil action of which the Court of International Trade has jurisdiction, other than an action specified in subsections (a)-(h) of this section, may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of section 702 of title 5." Section 702 of title 5 provides a right of review for "{a} person suffering legal wrong because of agency action, or adversely affected or aggrieved by

agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. As an association, a majority of whose members manufacture, produce, or wholesale a domestic like product in the United States, Plaintiff is adversely affected and aggrieved by the Department's issuance of Final Results that are "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C). As such, Plaintiff has standing to bring this action under 28 U.S.C. § 2631(i).

**BACKGROUND**

10. On December 26, 2024, the Department published the countervailing duty order on shrimp from Ecuador. Frozen Warmwater Shrimp from Indonesia: Antidumping Duty Order; Frozen Warmwater Shrimp from Ecuador, India, and the Socialist Republic of Vietnam: Countervailing Duty Orders, 89 Fed. Reg. 104,982 (Dep't Commerce December 26, 2024) ("CVD Order").

11. On March 6, 2025, the Department initiated an expedited review of the CVD Order based on requests from several Ecuadorian exporters and producers. See Frozen Warmwater Shrimp From Ecuador: Initiation of Expedited Review of the Countervailing Duty Order, 90 Fed. Reg. 11,398 (Dep't Commerce Mar. 6, 2025) ("Initiation"). As specified by 19 C.F.R. § 351.214(l)(3)(i), the period of review ("POR") for Commerce's expedited review is the same as the original period of investigation, i.e., January 1, 2022 through December 31, 2022. Initiation, 90 Fed. Reg. at 11,399 (citing 19 C.F.R. § 351.214(l)(3)(i)).

12. On March 10, 2026, the Department published its preliminary results with respect to the following companies that were subject to the expedited review: (1) Empacadora del Pacifico S.A. and its cross-owned affiliates ("Edpacif"); (2) Nirsa S.A. and Procesadora Posorja S.A. and certain of their cross-owned affiliates ("Nirsa/Proposorja"); and (3) Productos Perecibles y Mariscos S.A. and certain of its cross-owned affiliates ("Propemar"). See Frozen

Warmwater Shrimp From Ecuador: Preliminary Results and Partial Rescission of Countervailing Duty Expedited Review, 91 Fed. Reg. 11,511 (Dep't Commerce Mar. 10, 2026) ("Prelim Results") and accompanying preliminary decision memorandum ("PDM"). The Prelim Results calculated an above-de minimis rate for Edpacif and Nirsa/Proposorja, at 13.73 and 2.18 percent, respectively. Id. at 11,512. Propemar, on the other hand, preliminarily received a de minimis rate at 0.28 percent. Id. The Prelim Results indicated that certain additional subsidy programs and issues would be discussed in a post-preliminary analysis. See PDM at 14.

13. On June 29, 2026, the Department issued its post-preliminary analysis memorandum, which revised the subsidy rate for Propemar to 7.08 percent, a rate above de minimis levels. See Department Memorandum, "Post-Preliminary Memorandum for the Expedited Administrative Review of the Countervailing Duty Order on Frozen Warmwater Shrimp from Ecuador," C-331-806 (June 29, 2026).

14. Between July 10 and July 20, 2026, interested parties filed case briefs and rebuttal briefs in accordance with the deadlines set forth by the Department. On July 28, 2026, the Department held a hearing in which interested parties presented issues discussed in their case and rebuttal briefs.

15. On August 6, the Department published the Final Results, which continued to find that all three companies subject to the CVD expedited review had a subsidy rate that was above de minimis: 15.17 percent for Edpacif; 2.21 percent for Nirsa/Proposorja; and 2.25 percent for Propemar. See Final Results, 91 Fed. Reg. at 50,765. The Department indicated that it would direct U.S. Customs and Border Protection ("CBP") to collect cash deposits of estimated countervailing duties for the companies subject to this expedited review, at the rates calculated in

the Final Results, on shipments of subject merchandise entered, or withdrawn from warehouse, for consumption on or after August 6, 2026. Id., 91 Fed. Reg. at 50,766.

16. On September 14, 2026, the Department published an amended Final Results, which revised the subsidy rates for Edpacif and Nirsa/Proposorja in response to ministerial error allegations filed by AHSTAC. Edpacif's subsidy rate was revised to 15.18 percent and Nirsa/Proposorja 2.23 percent. See Amended Final Results, 91 Fed. Reg. 58,086.

17. The total subsidy rates assigned to the respondents include subsidy rates calculated under the Government of Ecuador's ("GOE") provision of electricity for less than adequate remuneration. See Final Results, 91 Fed. Reg. at 50,766.

## STATEMENT OF CLAIMS

### Count One

18. Plaintiff incorporates the allegations contained in paragraphs 1 through 17 as fully set forth herein.

19. In the Final Results, the Department found that the GOE's provision of electricity constitutes a countervailable subsidy. To calculate the benefit conferred from this program, the Department used cost data submitted by the GOE as a tier-three benchmark under 19 C.F.R. § 351.511(a)(2)(iii).

20. Under the Department's regulations, when choosing a tier-three benchmark, the agency is required to choose one that is "consistent with market principles."[2] 19 C.F.R. § 351.511(a)(2)(iii). The Department's practice when using a tier-three benchmark based on constructed costs is to perform a cost recovery analysis to ensure that the benchmark was inclusive of cost recovery plus a reasonable rate of return. See, e.g., Certain Hot-Rolled

---

[2] 19 C.F.R. § 351.511(a)(2)(iii).

Steel Flat Products from the Republic of Korea, 89 Fed. Reg. 41,380 (Dep't Commerce May 13, 2024) and accompanying Issues and Decision Memorandum at Comment 5; see also Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea, 87 Fed. Reg. 74,597 (Dep't Commerce Dec. 6, 2022) and accompanying Issues and Decision Memorandum at Comment 1; Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea, 87 Fed. Reg. 6,842 (Dep't Commerce Feb. 7, 2022) and accompanying Issues and Decision Memorandum at Comment 1. The Department, as the agency itself acknowledged, failed to do so in the expedited review. See IDM at 22.

21. The Department's failure to conduct any cost recovery analysis without a reasonable explanation is arbitrary and capricious. Moreover, the agency's selection of a benchmark that is inconsistent with market principles is contrary to the agency's own regulation and established practice and thus not in accordance with law. Accordingly, the Department's findings and action were "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

**Count Two**

22. Plaintiff incorporates the allegations contained in paragraphs 1 through 21 as fully set forth herein.

23. The Department is obligated to explain why a chosen benchmark is reasonable, considering the alternative available benchmarks. See, e.g., NMB Singapore Ltd. v. United States, 557 F.3d 1316, 1319 (Fed. Cir. 2009) (citing Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)).

24. In the Final Results, in selecting GOE's cost data, the Department rejected other tier-three benchmarks available on the record, including electricity price data from Peru and Colombia, that was more contemporaneous with the POR and was reflective of electricity prices

for a wide range of entities. The Department speculated that the Peruvian and Colombian electricity price data may be subsidized during the POR. See IDM at 23. Without further explanation, the agency summarily asserted that "the GOE's cost data are the more reliable and more probative basis for the tier-three inquiry." Id.

25. Because the Department's selection of a tier-three benchmark was based on speculation, the agency's findings and action are arbitrary and capricious. Accordingly, the Department's findings and action were "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

## REQUEST FOR RELIEF

26. Wherefore, Plaintiff respectfully requests that this Court:

a. Enter judgment in favor of Plaintiff;

b. hold and declare that the aspects of the Department's Final Results described herein are unsupported by substantial evidence, arbitrary and capricious, and are otherwise not in accordance with law; and

c. provide such other relief as this Court deems just and appropriate.

Respectfully submitted,

/s/ Nathaniel Maandig Rickard
Nathaniel Maandig Rickard
Sophia J.C. Lin
Zachary J. Walker
Caitlyn M. Quinn
**PICARD KENTZ & ROWE LLP**
1155 Connecticut Ave. N.W.
Suite 700
Washington, DC 20036
(202) 331-5040

*Counsel to Plaintiff Ad Hoc Shrimp Trade Action Committee*

Dated: November 13, 2026